The STATE of Ohio, Appellee,

v.

OVERHOLT, Appellant. (Two cases.)

[Cite as *State v. Overholt* (1991), 77 Ohio App.3d 111.]

Court of Appeals of Ohio,
Auglaize County.

Nos. 2–90–23, 2–90–24.

Decided Sept. 10, 1991.

*Mark Spees,* Prosecuting Attorney, and *Garrett T. Gall,* for appellee.

*Randall M. Dana,* Ohio Public Defender, and *Wendie A. Gerus,* for appellant.

EVANS, Judge.

Defendant-appellant Donald Overholt was indicted by a grand jury for the forcible rape, gross sexual imposition, and sexual battery of his seven-year old daughter, Dawn. In a second indictment he was charged with sexual battery and forcible rape of Dawn's six-year-old friend, Tasha Cornwell. The cases were consolidated for trial. Appellant conducted his own defense at trial, and was convicted by a jury on all charges. Pursuant to R.C. 2907.02(B), which provides for life imprisonment when a rape was perpetrated by force or threat of force, the trial court sentenced appellant to two consecutive terms of life imprisonment on the forcible rape convictions, two definite terms of two years' imprisonment on the sexual battery counts, and an indefinite term of ten to twenty-five years' incarceration on the count of gross sexual imposition. All sentences were ordered to be served consecutively.

The charges against appellant arose out of an investigation by the Children Services Division of the Auglaize County Department of Human Services, based on a report concerning possible neglect of Tasha Cornwell. When the caseworker interviewed the child, she learned of the possible sexual abuse of Tasha and her friend Dawn Overholt by Dawn's father, the appellant herein. The girls were interviewed by social service and medical personnel, and both

received physical examinations. Appellant's three children were subsequently removed from their home and placed into foster care.

Appellant first hired an attorney for his defense, who at the pretrial and arraignment informed the court that appellant was willing to enter a plea to one count of attempted rape. The court at that time reminded appellant of the nature and seriousness of the charges he faced, and potential punishments.

After a lengthy discussion with the judge, appellant decided he would rather go to trial, and pled not guilty. He then requested to dismiss his attorney. After some inquiry into the attorney-client relationship, and a brief assessment of appellant's knowledge and educational level, the judge appointed the same attorney to represent appellant at trial. The attorney then made a motion to withdraw as counsel, citing appellant's pending grievance against him with the Disciplinary Counsel, and incompatibility. Appellant told the court that he could procure another attorney to assist him. At a subsequent pretrial hearing, appellant requested to represent himself. After questioning him about his waiver of counsel, the court determined that appellant could represent himself, and appointed another attorney to act as standby counsel. The court then ordered a competency evaluation to be performed by the Dayton Area Forensic Center. Although found competent to stand trial, appellant, at the subsequent competency hearing, asked the court to appoint counsel on his behalf. The court appointed William Zimmerman, the previously appointed standby counsel, to represent him. However, at the final pretrial hearing, Zimmerman informed the court that appellant had fired him, and that he had plans to retain counsel with the help of his family. The trial court then acquiesced to appellant's latest request, but informed him that no further delays or continuances would be allowed, and that the trial would commence as rescheduled.

Appellant appeared for trial without counsel, and again informed the court that he wished to conduct his own defense. The court admonished him concerning his waiver of the right to counsel, and determined that the waiver was voluntary. Zimmerman was again appointed to act as standby counsel. Voir dire commenced shortly thereafter.

During voir dire and throughout the trial, appellant was repeatedly cautioned by the court against testifying and discussing matters not in evidence. He was also advised to freely utilize standby counsel as a resource. Before the prosecution rested its case, Zimmerman stated for the record that appellant had made serious errors in his cross-examinations, had refused another offer for plea negotiation, and had refused to consult with standby counsel. Appellant reiterated his preference for self-representation. Near the close of

the defense, appellant requested to "fire himself" and have his standby counsel take over for the remainder of the trial and for closing argument. The trial judge, considering appellant's performance throughout the proceedings, and the "lateness" of the event, denied appellant's "motion." The judge again reminded appellant that he was at liberty to consult with Zimmerman for the completion of the trial. Appellant then proceeded to make his closing remarks to the jury. The jury returned a verdict of guilty on all counts.

Appellant also elected to represent himself at the sentencing hearing. After sentencing, he was advised of his right to appointed counsel for purposes of appeal. Appellant chose to accept assistance of counsel, and notice was timely filed. He has asserted five assignments of error for appeal.

### First Assignment of Error

"The trial court failed to obtain a written waiver of appellant's right to counsel, as required by Rule 44(C) of the Ohio Rules of Criminal Procedure, resulting in a denial of appellant's rights pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution."

Crim.R. 44(C) provides: "Waiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Rule 22. In addition, in serious offense cases the waiver shall be in writing."

We have frequently held in past cases that, when non-compliance with a procedural rule is complained of, strict compliance with *form* is not required as long as there has been compliance with the substance and the spirit of the rule. Although we would not downplay the importance of the constitutional right to counsel, we conclude that the right is not compromised when its supporting procedural rule is substantially complied with. The record in this case reflects substantial compliance with the writing requirement.

Pursuant to the first sentence of Crim.R. 44(C), waiver of counsel must be made in open court and recorded. Appellant has not complained that this requirement was violated, and the record contains evidence that the condition was satisfied.

Crim.R. 44(C) also requires that, in serious cases, the right to counsel must be waived in writing. During the June 27, 1990 pre-trial hearing, the judge ordered appellant's handwritten "request to represent myself and defend myself" included in the record, after discussion "in open court" of the right to counsel. We find that the recorded writing constitutes sufficient written waiver of counsel, and overrule appellant's first assignment of error.

### Second Assignment of Error

"Appellant did not knowingly or intelligently waive his right to counsel, resulting in a denial of appellant's right pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

"A. The colloquy conducted by the trial court pursuant to *Faretta v. California* (1985), [*sic*] 422 U.S. 806 [95 S.Ct. 2525, 45 L.Ed.2d 562], was inadequate to ascertain whether appellant understood the full significance of his waiver of counsel.

"B. It was obvious throughout the trial that appellant did not understand that by waiving his right to counsel, appellant would be required to undertake the full range of activities normally undertaken by an attorney in a criminal trial, or that he would be required to comply with the rules governing criminal procedure.

"C. It was further obvious from his behavior both before and during trial that appellant lacked the capacity to enter a knowing, intelligent waiver of counsel."

### A

We find these contentions to be not well taken. The record adequately supports the trial judge's decision to accept appellant's waiver of the right to counsel. The United States Supreme Court held, in *Faretta v. California* (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562, that the federal Constitution grants to a defendant in a state criminal trial the right to voluntarily and intelligently waive representation by counsel, and to "personally manage and conduct his own defense." *Id.* at 817–818, 95 S.Ct. at 2532, 45 L.Ed.2d at 571–572. The court asserted in *Faretta* that a defendant's right to autonomy in choosing the means and extent of his defense must be respected, even to the extent that such a right "seems to cut against the grain" of the court's decisions which have required that an accused must be accorded the right to assistance of counsel before he may be convicted or imprisoned. See *id.* at 832–834, 95 S.Ct. at 2538–2541, 45 L.Ed.2d at 579–581. See, also, *Illinois v. Allen* (1970), 397 U.S. 337, 350–351, 90 S.Ct. 1057, 1063–1064, 25 L.Ed.2d 353, 362–363; *Gideon v. Wainwright* (1963), 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799; *Powell v. Alabama* (1932), 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158. The *Faretta* decision requires that since a defendant managing his own defense relinquishes the benefits associated with assistance of counsel, he must "knowingly and intelligently" elect to abandon the right to those benefits. See *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 581. The Ohio Supreme Court, following *Faretta*, has held that, to establish effective waiver

of assistance of counsel, "the trial court must make sufficient inquiry to determine whether defendant fully understands and relinquishes that right." *State v. Gibson* (1976) 45 Ohio St.2d 366, 74 O.O.2d 525, 345 N.E.2d 399, paragraph two of the syllabus. The *Gibson* court set forth the elements of a "sufficient inquiry" in a trial court's determination that there was "an intelligent and competent waiver by the accused." *Id.* at 376, 74 O.O.2d at 531, 345 N.E.2d at 406 (citing *Von Moltke v. Gillies* [1948], 332 U.S. 708, 723, 68 S.Ct. 316, 323, 92 L.Ed. 309, 321). The trial judge's responsibility in accepting a defendant's waiver of counsel includes the determination that the waiver was made "with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." *Von Moltke*, 332 U.S. at 724, 68 S.Ct. at 323, 92 L.Ed. at 321.

The record herein contains sufficient evidence to satisfy this court that appellant did make an intelligent and competent waiver of his constitutional right to assistance of counsel at trial. The thousand-page record of appellant's trial and pretrial hearings, submitted for purposes of appeal, is replete with the judge's explanations and warnings to appellant of the dangers of acting in his own defense. The judge repeatedly gave appellant the opportunity, and in fact pleaded with him, to accept counsel for his defense.

The court determined early in the proceedings that appellant was aware of the charges against him and the "allowable penalties" that awaited him if convicted. The trial judge took further measures to assure himself of appellant's competency by ordering a professional evaluation prior to trial. That evaluation, conducted by a forensic psychologist, verified that appellant was competent to stand trial, that he was of average or above-average intelligence, that he was capable of understanding the purposes and adversarial nature of the trial process, and that he had begun planning his defense strategy. Even if the court failed to precisely evaluate appellant's familiarity with the proper rules of evidence and procedure, or his knowledge of the criminal justice system, this omission was palliated by the appointment of standby counsel to assist appellant during all stages of the trial. The trial judge advised appellant countless times throughout the trial that counsel was available to him for consultation on any matters, substantive or procedural. As this court has previously recognized, the easy availability of counsel to the defendant "served to preserve for the appellant the traditional benefits associated with the right to counsel while still permitting appellant to present his own defense." *State v. Allen* (Mar. 1, 1988), Allen App. No. 1–86–11, unreported, at 6, 1988 WL 29241. That appellant stubbornly refused to

cooperate with or consult with the appointed standby counsel (who repeatedly assured appellant and the court that he was completely available) may not now be capitalized on by him in a complaint that he was denied a competent defense. See *Faretta, supra,* 422 U.S. 806, 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 581, fn. 46.

We believe that the requirements of *Faretta,* expressed in *State v. Gibson, supra,* have been met, and that appellant's waiver was adequately determined by the trial court to be knowing and intelligent.

### B

For his second and third contentions, appellant asserts that, because of his obviously deficient performance at trial, he should now be permitted to cry "foul" and start anew. Appellant complains that, in retrospect, his understanding of the full range of activities undertaken by an attorney in a criminal trial was minimal, at best.

■ This court will not review *de novo* the trial judge's determination that appellant was competent, albeit with the assistance of standby counsel, to conduct his own defense. The United States Supreme Court stated in *Faretta,* 422 U.S. at 836, 95 S.Ct. at 2541, 45 L.Ed.2d at 582, that "[the defendant's] legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself." By appointing willing and able standby counsel to assist at every stage of the trial, the trial judge in this case preserved for appellant the traditional benefits associated with the right to counsel. In addition, the record demonstrates that appellant was informed of the standards he would be expected to comply with in conducting his defense:

"[I]n representing yourself, you or anyone else must do so in accordance with the Rules of Criminal Procedure and the Rules of Practice. You may not make a request other than through motion. You may not correspond through letter to the court but instead must follow the procedures which are required of anyone, which include proof of service and include filing."

At the cited hearing, standby counsel was appointed to assist appellant with procedural and other issues that would arise prior to and during trial. Frequently throughout the actual trial, appellant was reminded to conduct examination of witnesses and make motions and objections according to required procedure, and that counsel was available to assist him. A quote from *Faretta, supra,* illustrates our position on appellant's second and third contentions:

"It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts. But

where the defendant will not voluntarily accept representation by counsel, the potential advantage of a lawyer's training and experience can be realized, if at all, only imperfectly. To force a lawyer on a defendant can only lead him to believe that the law contrives against him. * * * And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.'" *Faretta*, 422 U.S. at 834, 95 S.Ct. at 2540–2541, 45 L.Ed.2d at 581 (quoting *Illinois v. Allen* [1970], 397 U.S. 337, 350–351, 90 S.Ct. at 1064–1065, 25 L.Ed.2d at 361–363). Therefore, the second assignment of error is overruled.

### Third Assignment of Error

"The trial court committed plain error in failing to *sua sponte* declare a mistrial or in the alternative to revoke its consent for the appellant to proceed without counsel where appellant clearly failed to comprehend either correct criminal procedure or the role of defense counsel in a criminal prosecution, and where appellant either failed or refused to consult with standby counsel, in violation pursuant to [*sic*] both the United States and Ohio Constitutions."

The Ohio Supreme Court has indicated the general standard of review to be followed by appellate courts examining lower court judgments: "[A]n appellate court should not consider questions which have not been properly raised in the trial court and upon which the trial court has had no opportunity to pass." *State v. Long* (1978), 53 Ohio St.2d 91, 95, 7 O.O.3d 178, 180, 372 N.E.2d 804, 807. Although an appellate court may, *sua sponte*, review an error not raised in the trial court, there must be a strong showing that "but for the error, the outcome of the trial clearly would have been otherwise." *Id.* at paragraph two of the syllabus. The *Long* court went on to state that "the plain error rule should be applied with caution and should be invoked only to avoid a clear miscarriage of justice." *Id.* at 95–96, 7 O.O.3d at 180, 372 N.E.2d at 807.

Since substantial evidence was presented at trial to support appellant's jury conviction of the charged offenses, it is far from clear that appellant's conviction would not have occurred but for his representation of himself. Thus, in light of our discussion of appellant's second assignment of error, *supra*, which encompasses the issues presented here, we overrule the third assignment of error.

### Fourth Assignment of Error

"Where appellant initially opted to proceed without counsel, the trial court abused its discretion in refusing appellant's request to appoint counsel after

the trial was under way and it became apparent that appellant was incapable of effectively representing himself, in violation of his rights pursuant to the Sixth and Fourteenth Amendments to the United States Constitution."

Again, appellant urges us to consider his inept management of his defense at trial to support a reversal of his conviction. As stated above, a retrospective analysis is not required when a trial court makes a legally sufficient determination that a defendant is competent to waive his right to counsel. Although appellant cites some support for the proposition that the trial judge had the authority to rescind the consent to self-representation, the case relied on clearly states that defendants have no statutory or constitutional right to "hybrid representation," *i.e.,* "active participation by appointed counsel in their defense in addition to self-representation." See *State v. Carter* (1977), 53 Ohio App.2d 125, 127–128, 7 O.O.3d 90, 92, 372 N.E.2d 622, 625. Federal courts following *Faretta* have also held that, although an accused may elect to be defended by himself or by counsel, he has no right to "hybrid representation." See, *e.g., United States v. Mosely* (C.A.6, 1987), 810 F.2d 93; *United States v. Hill* (C.A.10, 1975), 526 F.2d 1019; *United States v. Wolfish* (C.A.2, 1975), 525 F.2d 457.

The record reflects that in this case, although the trial judge repeatedly recommended against appellant's assumption of his own defense, and urged him to rely on standby counsel during the trial, appellant reiterated his desire to conduct his own defense on all occasions. Only near the close of the trial, when the state had rested, and the defense had only one more witness to examine, did appellant assert his right to counsel. The court, noting the advanced stage of the trial, refused to allow standby counsel to "take over," but again exhorted appellant to utilize counsel in the preparation of his closing argument. We find no error in the trial court's actions. However, considering the advanced stage of the trial, the flagrant mistakes appellant made in conducting his own defense, and appellant's refusal to utilize the resources made available to him, any error the court may have made at that point would only be considered "harmless." Therefore, we overrule the fourth assignment of error.

### Fifth Assignment of Error

"The trial court committed plain error in ordering appellant as part of his sentence to pay the cost of psychological counseling for the two alleged victims through the age of eighteen."

Although the legislature has provided for award of restitution to victims of crime, the Supreme Court has not, to date, interpreted such statutes to grant reimbursement for mere speculative injury, or psychological harm

indirectly or directly resulting from criminal activity. While we do not believe that the award is inappropriate, the law of restitution in Ohio has not been extended to cover the situation before us. We do not apply the "plain error" rule, as urged by appellant, but we do suggest that such an award has, to date, little or no foundation, and thus constitutes an abuse of discretion by the trial court.

The issue has, however, been addressed in a few of the intermediate appeals courts. *E.g., State v. Wohlgemuth* (1990), 66 Ohio App.3d 195, 583 N.E.2d 1076; *State v. Williams* (1986), 34 Ohio App.3d 33, 516 N.E.2d 1270. In *Williams,* the defendant was ordered to make restitution to the family of the victim of defendant's "aggravated vehicular homicide." The court pointed out that, under R.C. 2929.11(E), restitution may be required from a felon for "all or part of the property damage that is caused by his offense," and that the actual damage or loss caused must be "established to a reasonable degree of certainty before restitution can be ordered." *Id.* at 34, 516 N.E.2d at 1271. As stated by the appellant herein, the statutory definition of "property" does not include medical or psychiatric expenses. The appellant's fifth assignment of error is therefore affirmed.

Having found no error prejudicial to appellant in the first four assignments of error argued and briefed, the judgement of the trial court as to appellant's convictions and penal sentences is affirmed, and, as the order for restitution was improper, the trial court's judgment for restitution against appellant is reversed.

*Judgment affirmed in part
and reversed in part.*

HADLEY and SHAW, JJ., concur.